# Exhibit A

DATE FILED: December 21, 2016 12:01 PM
FILING ID: AAC8FC0A53F27
CASE NUMBER: 2016CV34694

DISTRICT COURT, DENVER COUNTY,
STATE OF COLORADO
Court Address:    1437 Bannock Street
                  Golden, CO 80202
Phone number:    (720) 865-8301

**Plaintiff:**

LISA BRADFORD, an individual,

v.

**Defendant:**

ACUITY, A MUTUAL INSURANCE COMPANY,
a Wisconsin entity.

▲ COURT USE ONLY ▲

Case No.:

Courtroom:

Attorneys for Plaintiff:
OGBORN MIHM, LLP
Michael Mihm, Atty. Reg. # 14768
Peter A. McClenahan, Atty. Reg. #41044
Thomas D. Neville, Atty. Reg. #35011
1700 Broadway, Suite 1900
Denver, Colorado 80290
Phone Number: (303) 592-5900

## COMPLAINT AND JURY DEMAND

Plaintiff Lisa Bradford, for her Complaint and Jury Demand, alleges:

## PARTIES AND JURISDICTION

1.    At all times relevant, Plaintiff Lisa Bradford and her deceased husband, Mr. Neil

Bradford, were residents of Colorado.

2.    At all times relevant, Lisa Bradford was the spouse of her deceased husband.

3.    Defendant Acuity, A Mutual Insurance Company ("Acuity") is a Wisconsin entity that

1

engages in business in Colorado as a registered foreign entity.

4.    Defendant Acuity does business in 24 states, including Colorado.

5.    Defendant Acuity has self-reported annual revenue of more than $1.2 billion.

6.    Defendant Acuity manages more than $3.5 billion in assets.

7.    The fatal motor vehicle accident giving rise to this action occurred in Colorado on July 21, 2014.

8.    Acuity's denial of the insurance claim which is the subject of this action occurred in the City and County of Denver, Colorado.

9.    Venue is proper in Denver County pursuant to C.R.C.P. Rule 98(c)(1) and (5).

10.    Simplified Procedure under C.R.C.P. 16.1 does not apply to this case because Plaintiff is seeking a monetary judgment for more than $100,000.00 against another party, including any attorney fees, penalties or punitive damages, but excluding interest and costs.

## GENERAL ALLEGATIONS

11.    At all relevant times, Neil and Lisa Bradford were insured under a "Road and Residence" insurance policy issued by Defendant Acuity, policy number R53630-6, which was in full force and effect at the time of the incident giving rise to this action.

12.    In or around the year 2000, Neil and Lisa Bradford began timely and faithfully paying their monthly premiums to Acuity for policy number R53630-6.

13.    Neil and Lisa Bradford's Acuity insurance policy includes underinsured motorist ("UIM") coverage.

14.     Neil and Lisa Bradford's Acuity insurance policy provides UIM coverage with policy limits of $1,500,000.00.

## THE UNDERLYING ACCIDENT

15.     On July 21, 2014, Neil Bradford was 43 years old.

16.     Neil and Lisa Bradford were married on July 8, 1995 in Denver, Colorado.

17.     At the time of his death, Neil Bradford was the owner of Argus Systems, Inc., a precision aerospace parts manufacturing company with customers that included Lockheed Martin.

18.     Lisa Bradford is a licensed and practicing physical therapist.

19.     Neil and Lisa Bradford have two daughters, Jenna (then 17 years old) and Jocelyn (then 15 years old).

20.     On July 21, 2014, Neil Bradford was riding his bicycle eastbound on Deer Creek Canyon Road, which is located in Jefferson County.

21.     Simultaneously, Keith Lukovsky was driving his SUV, a 2005 GMC Yukon Denali, westbound on Deer Creek Canyon Road.

22.     At the intersection of Deer Creek Canyon Road and Grizzly Drive, Keith Lukovsky made a left hand turn from westbound Deer Creek Canyon Road onto southbound Grizzly Drive.

23.     As Keith Lukovsky made his left hand turn and crossed through the eastbound lane of Deer Creek Canyon Road, he struck Neil Bradford.

24.     At the time, Neil Bradford was riding his bicycle under control within the eastbound lane of Deer Creek Canyon Road.

3

25.     Keith Lukovsky struck Neil Bradford with the front of his vehicle and the force of the impact caused severe injuries to Neil Bradford including complex skull fractures, subarachnoid hemorrhages, aortic lacerations, multiple rib, leg and wrist fractures and pulmonary lacerations.

26.     Neil Bradford was brought by ambulance to Swedish Medical Center but was pronounced dead as a result of the injuries sustained in the collision soon after his arrival.

27.     As a direct and proximate result of the negligent acts and omissions of Keith Lukovsky, Neil Bradford suffered grievous injury and death and Lisa Bradford incurred damages including, but not limited to, the wrongful death of Mr. Bradford, pain, suffering, grief and emotional distress, both past and future; loss of love, society, companionship, and other elements of non-economic loss; loss of services, past and future economic losses, loss of future economic support, and funeral and burial expenses.

28.     Keith Lukovsky negligently violated his duty to exercise reasonable care in the operation of the motor vehicle he was driving in the following non-exclusive respects:

   a.     Neglecting to maintain a proper lookout;

   b.     Failing to see what could and should have been seen;

   c.     Failing to slow and stop as appropriate for a left hand turn;

   d.     Failing to drive with sufficient caution given the regular traffic of bicyclists on Deer Creek Canyon Road;

   e.     Operating, upon information and belief, his cell phone while driving;

   f.     Driving at a speed greater than reasonable under the conditions then existing;

    g.      Driving aggressively;

    h.      Failing to use his turn signal; and

    i.      Failing to yield the right of way to a bicyclist approaching from the opposite direction.

29.    As a result of Keith Lukovsky's negligence, Lisa Bradford has sustained the damages alleged herein.

## THE UNDERLYING LITIGATION

30.    On June 26, 2015, Lisa Bradford filed a lawsuit against Keith Lukovsky alleging damages arising from the July 21, 2014 fatal accident (the "Lukovsky litigation").

31.    During the Lukovsky litigation, it was revealed that Keith Lukovsky had a long history of traffic violations including the following:

    a.      DUI roll-over crash in Jefferson County;

    b.      Failure to stop at a stop sign in Jefferson County;

    c.      Five different speeding violations in Jefferson County;

    d.      Citation for driving an unsafe or defective vehicle in Jefferson County;

    e.      Speeding violation in Sedgwick County; and

    f.      Speeding violation in Littleton, Colorado.

32.    During the Lukovsky litigation, it was revealed that that just seconds before pulling into Neil Bradford's lane of traffic and colliding with Neil Bradford, Keith Lukovsky drove directly past a "Share the Road" sign on Deer Creek Canyon Road that warned drivers to have a heightened

awareness of bicyclists.

33.     During the Lukovsky litigation, Keith Lukovsky testified under oath that he was aware and understood that Deer Creek Canyon Road was heavily trafficked with bicyclists.

34.     During the Lukovsky litigation, Keith Lukovsky testified under oath that due to his knowledge of Deer Creek Canyon Road's heavy bicycle traffic, he had a duty to be more careful and to maintain a heightened awareness for bicyclists on the road.

35.     During the Lukovsky litigation, Keith Lukovsky testified under oath that on the day of the accident:

      a.     He arose at 6:30 a.m.;

      b.     He drove 55 minutes to a construction site;

      c.     He worked a 12 hour work day at a construction site outdoors in July;

      d.     He drove 55 minutes back to his neighborhood when the accident occurred at about 8:45 p.m.

36.     During the Lukovsky litigation, Keith Lukovsky testified under oath that he had an obligation to look down Deer Creek Canyon Road for any oncoming traffic before turning left onto Grizzly Drive.

37.     During the Lukovsky litigation, Ms. Sarah Long, an eyewitness who arrived on the scene moments after the accident, provided sworn deposition testimony.

38.     During her deposition, Sarah Long testified under oath that immediately after the accident, she parked her car in the same turning lane where Keith Lukovsky had made his left hand

turn and collided with Neil Bradford.

39.     Sarah Long testified under oath that she was able to see down the road in the direction of where Neil Bradford would have been riding his bike.

40.     Sarah Long testified under oath that it was not too dark to see in the direction of where Neil Bradford would have been riding his bike.

41.     Sarah Long testified that Keith Lukovsky has a reputation for driving fast around their neighborhood.

42.     Sarah Long testified that there is heavy bicycle traffic on Deer Creek Canyon Road in the summertime.

43.     Keith Lukovsky was at fault for the July 21, 2014 fatal accident.

44.     During the Lukovsky litigation, as part of her Colo.R.Civ.Pro. 26(a)(2) expert disclosures, Lisa Bradford disclosed the expert report of Mr. Tilo Voitel and James Marr, B.A., B.S., who are Accident Reconstructionists with Kineticorp, LLC.

45.     The Kineticorp, LLC expert report concluded that Keith Lukovsky was negligent and at fault in causing the fatal July 21, 2014 accident involving Neil Bradford.

46.     During the Lukovsky litigation, as part of her Colo.R.Civ.Pro. 26(a)(2) expert disclosures, Lisa Bradford disclosed the expert report of Harper Hofer & Associates, LLC regarding the amount of her economic damages that resulted from the death of her husband Neil Bradford.

47.     The Harper Hofer & Associates, LLC expert report analyzed, among other things, the business value of the precision aerospace parts manufacturing company that Neil Braford owned and

operated at age 43.

48.     The Harper Hofer & Associates, LLC expert report concluded that Lisa Bradford's economic damages that resulted from the death of her husband were $8,245,613.

## UNDERINSURED MOTORIST CLAIMS

49.     On March 24, 2016, Lisa Bradford asked Acuity for permission to settle her claims against Keith Lukovsky for $2,000,000.

50.     On March 25, 2016, Lisa Bradford notified Acuity that she intended to make a claim for UIM benefits.

51.     On March 30, 2016, Acuity's senior field manager, Art Lautenschlager, gave Lisa Bradford permission to settle the Lukovsky litigation for $2,000,000.

52.     On March 31, 2016, Lisa Bradford provided Acuity with a copy of the proposed release and settlement agreement prepared by Mr. Lukovsky's counsel.

53.     On April 1, 2016, Art Lautenschlager, approved the terms of the proposed release and settlement agreement.

54.     In the same email in which Art Lautenschlager approved the proposed release and settlement agreement, he also requested an in-person meeting with himself, his Acuity manager, Lisa Bradford, and her litigation counsel, to further discuss Mrs. Bradford's claim for UIM benefits.

55.     On April 4, 2016, Lisa Bradford settled her claims against Keith Lukovsky for $2,000,000.

56.     On April 12, 2016, Art Lautenschlager, renewed his request for an in-person meeting

with Lisa Bradford and her litigation counsel.

57.    Art Lautenschlager did not explain the reason why he wanted to meet personally with Lisa Bradford and her counsel.

58.    On May 13, 2016, Acuity's representatives, including Art Lautenschlager and his manager, met in-person with Lisa Bradford and her representatives at the offices of Lisa Bradford's litigation counsel in Denver, Colorado.

59.    At the May 13, 2016 meeting, Lisa Bradford, through her representatives, requested that Acuity honor its duty to pay its policy limits under the UIM provisions of Neil and Lisa Bradford's Acuity policy.

60.    At the May 13, 2016 meeting, in response to Lisa Bradford's request that Acuity pay its policy limits, Art Lautenschlager stated, among other things, "You have no case."

61.     At the May 13, 2016 meeting, in response to Lisa Bradford's request that Acuity pay its policy limits, Art Lautenschlager stated, among other things, "Why should we pay you anything?"

62.    At the May 13, 2016 meeting, in response to Lisa Bradford's request that Acuity pay its policy limits, Art Lautenschlager and his manager abruptly walked out of the meeting.

63.    As of May 13, 2016, Acuity denied Lisa Bradford's UIM claim at the meeting in Denver, Colorado.

64.    As of May 13, 2016, Acuity had not reviewed the vast majority of the evidence from the underlying Lukovsky litigation, including expert reports filed in the case by Lisa Bradford and substantial deposition testimony of the witnesses involved.

9

65.     In light of Acuity's unreasonably confrontational and dismissive conduct at the May 13, 2016 meeting, Lisa Bradford understood that her claim had been denied by Art Lautenschlager and Acuity.

66.     On or about May 24, 2016, Acuity hired the law firm of Resnick & Lewis, P.C., which specializes in defending insurance bad faith cases, to represent Acuity in its dealings with its own insured, Lisa Bradford.

67.     Despite Acuity's unreasonably confrontational and dismissive conduct at the May 13, 2016 meeting, Lisa Bradford desired to set the record straight regarding her husband's death.

68.     On or about May 25, 2016, Lisa Bradford, through her representatives, provided Acuity with substantial additional information (including depositions and expert reports) which Acuity had not reviewed and evaluated before denying her claim for UIM benefits at the May 13, 2016 meeting.

69.     In response, on June 17, 2016, Acuity's lawyers wrote a letter to Lisa Bradford's representatives which included false statements of fact.  By way of example, the letter falsely stated that Lisa Bradford and her representatives "left the [May 13, 2016] meeting."  In fact, it was Art Lautenschlager and his manager who abruptly walked out of the May 13, 2013 meeting.

70.     On June 27, 2016, Lisa Bradford requested that Acuity sign a confidentiality agreement before being provided with Neil and Lisa Bradford's tax returns and other financial information.

71.     On July 5, 2016, Acuity's lawyers wrote a letter to Lisa Bradford's representatives responding to Mrs. Bradford's request for a confidentiality agreement.  This letter again included false

statements of fact.  By way of example, the letter falsely stated that "there was no protective order or confidentiality agreement in place in the [underlying] suit for these documents, and that no such order or agreement was ever discussed with Keith Lukovsky's counsel. I understand that you freely turned over these documents to Mr. Lukovsky, his counsel, and his experts."  In fact, Keith Lukovsky's counsel did sign a confidentiality agreement in the underlying case before being provided with the tax returns and other financial documents.

72.    On October 24, 2016, Acuity sent a letter to the office of Mrs. Bradford's litigation counsel in Denver Colorado which stated in its entirety, "Please be advised that Acuity Insurance is willing to extend a settlement offer to your client for the Underinsured Motorist claim she is presenting in the amount of $250,000.00.  Please call me upon your acceptance so I can proceed to process the settlement check."

73.    Acuity's letter of October 26, 2016, failed to provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

74.    The failure to provide such an explanation was a violation of § 10-3-1103(h)(XIV), Colo. Rev. Stat.

75.    On October 31, 2016, Lisa Bradford requested in writing that Acuity provide an explanation for why Acuity was refusing to pay the full value of her UIM claim.

76.    On November 2, 2016, Acuity sent a letter to the office of Mrs. Bradford's litigation counsel in Denver, Colorado detailing the basis for its offer.

77.    In its November 2, 2016 letter, Acuity stated that it had adjusted the claim under the assumption that a jury would apportion 51% of the fault for the underlying crash to Keith Lukovsky and 49% of the fault for the underlying crash to Neil Bradford.

78.    In its November 2, 2016 letter, Acuity stated that Acuity was relying on the expert report of Fay Engineering Corporation (the "Fay Report"), which was prepared on August 5, 2015.

79.    The Fay Report was prepared before the depositions of any of the witnesses in the underlying case were taken.

80.    The Fay Report failed to take into consideration the testimony of witnesses such as Sarah Long, who testified that there was adequate available light for a reasonable driver to have seen Neil Bradford approaching the intersection.

81.    The Fay Report relied, in part, upon the Colorado State Patrol Accident Report prepared by Trooper Jordan Tinajera.

82.    During his deposition, Trooper Tinajera testified that he does not have an opinion one way or the other as to whether Keith Lukovsjy was negligent using the civil standard.

83.    During his deposition, Trooper Tinajera testified that his report failed to accurately portray the light available at the intersection at the time of the accident.

84.    During his deposition, Trooper Tinajera testified that he had failed to interview eyewitnesses with knowledge of the actual lighting conditions at the time of the crash on July 21, 2014.

85.    During his deposition, Trooper Tinajera testified that his report incorrectly stated that

12

Neil Bradford was wearing dark clothing without reflective materials at the time of the crash.

86.    During his deposition, upon seeing photographs for the first time of the clothing that Neil Bradford was wearing at the time of the crash, Trooper Tinajera admitted, "This doesn't look like dark clothing at all."

87.    During his deposition, Trooper Tinajera testified that Neil Bradford's shoes appeared to be reflective.

88.    During his deposition, Trooper Tinajera described Neil Bradford's bike helmet as "a bright silver color."

89.    Acuity's reliance on the Fay Report, despite of its possession of deposition transcripts showing that the factual premises underlying the reports were inaccurate, is evidence that the reasons set forth in Acuity's November 2, 2016 letter are post hoc justifications to support its May 13, 2016 denial of Mrs. Bradford's claim.

## **FIRST CLAIM FOR RELIEF**
(Common Law Bad Faith Breach of Contract)

90.    Plaintiff incorporates the allegations in paragraphs 1 through ___ as if fully set forth herein.

91.    Acuity owes duties to Lisa Bradford under the insurance policy's implied covenant of good faith and fair dealing, wherein Acuity covenanted that it would, in good faith and in the exercise of fair dealing, deal with Lisa Bradford fairly and honestly, and do nothing to impair, interfere with, hinder, or potentially injure Lisa Bradford's rights to receive the benefits of the insurance contract. Acuity has breached its duty of good faith and fair dealing by, among other things:

13

    a.      Failing to effectuate prompt, fair, and equitable settlements of claims in which liability has become clear;

    b.      Compelling Lisa Bradford to institute litigation to recover amounts due under the insurance policy issued by Acuity; and

    c.      Other acts of willful and unreasonable claims handling as will be shown at the trial hereof.

92.     Acuity has acted unreasonably in adjusting Lisa Bradford's claim for UIM benefits.

93.     Acuity knew or should have known its conduct has been unreasonable.

94.     As a proximate result of Acuity's actions, Lisa Bradford has suffered damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF
### (Violation of C.R.S. §§ 10-3-1115, 1116)

95.     Plaintiff incorporates the allegations in paragraphs 1 through __ as if fully set forth herein.

96.     Acuity is engaged in the business of insurance.

97.     Acuity has unreasonably delayed payment of this claim for benefits to Lisa Bradford, a first party claimant.

98.     Acuity has unreasonably denied payment of this claim for benefits to Lisa Bradford, a first party claimant.

99.     Acuity's delay and denial of this claim is without a reasonable basis.

100.    Lisa Bradford has suffered damages as a result of Acuity's unreasonable delay, and bad

14

faith conduct, in the form of economic and non-economic damages to be proven at trial.

101.    Pursuant to C.R.S. § 10-3-1116, Lisa Bradford brings this action to recover reasonable attorney fees, court costs, and a multiple amount of the covered benefit.

### THIRD CLAIM FOR RELIEF
(Breach of Contract)

102.    Plaintiff incorporates the allegations in paragraphs 1 through __ as if fully set forth herein.

103.    The policy issued by Acuity provided coverage to Lisa Bradford for, among other things, UIM coverage.

104.    Lisa Bradford made a claim for UIM insurance benefits as may be paid pursuant to the Policy providing coverage to Lisa Bradford for losses caused by the negligence of an under-insured motorist.

105.    Lisa Bradford has performed all conditions and covenants to be performed on her part under the contract.

106.    Acuity has refused to provide coverage to Lisa Bradford for her injuries and damages pursuant to the terms of the insurance contract, thereby breaching the same.

107.    Acuity's breach of the settlement contract has resulted in damages to Lisa Bradford.

108.    Lisa Bradford seeks benefits for damages and losses together with pre-judgment interest and costs.

WHEREFORE, Lisa Bradford requests this Court enter judgment against Acuity for actual damages, statutory damages, pre judgment interest, attorney fees, costs, and such other relief as this

Court deems proper.

## NOTICE OF INTENT TO AMEND

Please take notice of Plaintiff's intent to request leave to amend this Complaint, at a time

when the evidence justifies and the law permits, to include a prayer for exemplary damages.

## PLAINTIFF DEMANDS A TRIAL BY JURY

Respectfully submitted this 21st day of December, 2016.

**OGBORN MIHM, LLP**

*/s/ Michael Mihm*
_____

Michael Mihm, Atty. Reg. #14768
Peter A. McClenahan, Atty. Reg. #41044
Thomas D. Neville, Atty. Reg. #35011
1700 Broadway, Suite 1900
Denver, Colorado 80290
Phone Number: (303) 592-5900
*Attorneys for Lisa Bradford*

Plaintiff's Address:
5531 S. Harlan Street
Littleton, CO 80123

# Exhibit B

| DISTRICT COURT, DENVER COUNTY, COLORADO<br>1437 Bannock Street<br>Denver, CO 80202 | |
|---|---|
| Plaintiff:  LISA BRADFORD, an individual<br>v.<br>Defendant:  ACUITY, A MUTUAL INSURANCE COMPANY,<br>a Wisconsin entity | ▲ COURT USE ONLY ▲ |
| Attorneys for  Plaintiff<br>Michael Mihm, Atty Reg #: 14768<br>Peter A. McClenahan, Atty Reg #: 41044<br>Thomas D. Neville, Atty Reg #: 35011<br>Ogborn Mihm, LLP<br>1700 Broadway, Suite 1900<br>Denver, CO 80290<br>Phone Number: (303) 592-5900<br>FAX Number:  (303) 592-5910<br>Michael.Mihm@OMTrial.com;<br>Peter.McClenahan@OMTrial.com;<br>Thomas.Neville@OMTrial.com; | Case No.:<br><br>Division: |

## AFFIDAVIT OF SERVICE – Acuity, A Mutual Insurance Company

I, Scott Snodgrass, being first duly sworn on oath, depose and say the following:

I am over 18 years old and not a party to this action.

On December 28, 2016, at approximately  2:35 p.m., I served the Summons, Civil Cover Sheet, and Complaint and Jury Demand on **Acuity, A Mutual Insurance Company** in the following manner:

**Corporate Service to Registered Agent:** by leaving a copy of the documents with Emily Rauch, Process Specialist at The Corporation Company, which serves as the registered agent for Acuity, A Mutual Insurance Company.

Service was effected at 7700 E Arapahoe Rd., Suite 220, Centennial, CO 80112.  Served in Arapahoe County.

STATE OF COLORADO
COUNTY OF DENVER

X _Scott Snodgrass_
**Scott Snodgrass**
Relentless Pursuit, LLC
3531 S. Logan St. D-411
Englewood, CO 80113
303 570-6285

Signed and sworn to before me on this 31st day of ___Dec.___, 20 16

_Jeanette S Snodgrass_
Notary Public

```
JEANETTE S. SNODGRASS
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20074023418
MY COMMISSION EXPIRES JUNE 27 2019
```

# Exhibit C

## Register of Actions

| | **Filed by**<br>**Plaintiff/Petitioner** | | **Case Number:** 2016CV034694 | | **Division:** 414 | |
|---|---|---|---|---|---|---|

| | **Filed by**<br>**Defendant/Respondent** | | **Case Type:** Breach of Contract | | **Judicial Officer:** Robert Lewis Mcgahey JR. | |
|---|---|---|---|---|---|---|

| | **Filed by Court** | | **Case Caption:** Bradford, Lisa v. Acuity | | **Court Location:** Denver County - District | |
|---|---|---|---|---|---|---|

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| DE369A90B6CD1 | 01/03/2017 10:54 AM | Peter A McClenahan | Ogborn Mihm, LLP | Lisa Bradford | Return of Service | Affidavit of Service - Acuity, A Mutual Insurance Company - Summons, Civil Cover Sheet, Complaint and Jury Demand served to Emily Rauch for Acuity, a Mutual Insurance Company on 12/28/16 | Public |
| BDCF598218CE3 | 12/23/2016 12:00 PM | Peter A McClenahan | Ogborn Mihm, LLP | Lisa Bradford | Summons | Summons (Acuity Insurance) | Public |
| AAC8FC0A53F27 | 12/21/2016 12:01 PM | Michael Mihm | Ogborn Mihm, LLP | Lisa Bradford | Complaint w/Jury Demand | Complaint and Jury Demand | Public |
| | | | | | Civil Case Cover Sheet | District Court Civil Case Cover Sheet | Public |
| N/A (Details) | 12/21/2016 | Karen L. Brody | Denver District Court | N/A | Order | Delay Reduction Order | Public |

## Party Information

| Party Name | Party Type | Party Status | Attorney Name |
|---|---|---|---|
| Acuity | Defendant | Active | N/A |
| Lisa Bradford | Plaintiff | Active | Michael Timothy Mihm (Ogborn Mihm, LLP )<br>Peter A. McClenahan (Ogborn Mihm, LLP )<br>Thomas Dean Neville (Ogborn Mihm, LLP ) |

# Exhibit D

<table>
<tr><td>

DISTRICT COURT, COUNTY OF DENVER
STATE OF COLORADO

Court Address:
1437 Bannock Street
Denver, CO 80202

T: (720) 865-8301

</td><td rowspan="3">

▲    COURT USE ONLY    ▲

Case Number:  2016CV34694

Courtroom:

</td></tr>
</table>

| | |
|---|---|
| **DISTRICT COURT, COUNTY OF DENVER**<br>**STATE OF COLORADO**<br><br>Court Address:<br>1437 Bannock Street<br>Denver, CO 80202<br><br>T: (720) 865-8301 | |
| **Plaintiff:**<br><br>LISA BRADFORD, an individual,<br><br>v.<br><br>**Defendant:**<br><br>ACUITY, A MUTUAL INSURANCE COMPANY, a<br>Wisconsin entity. | ▲    COURT USE ONLY    ▲<br><br>Case Number:  2016CV34694<br><br>Courtroom: |
| Attorneys for Defendant ACUITY, A MUTUAL INSURANCE<br>COMPANY<br><br>RESNICK & LOUIS, P.C.<br>John T. Osgood, No. 34999<br>Joel A. Palmer, No. 36459<br>6500 South Quebec Street, Suite 300-32<br>Denver, Colorado 80111<br>Telephone and Fax: 303-872-6226<br>Email:  josgood@rlattorneys.com<br>          japalmer@rlattorneys.com | |
| **NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT**<br>**COURT FOR THE DISTRICT OF COLORADO** | |

COMES NOW Defendant ACUITY, A MUTUAL INSURANCE COMPANY, by and through its

attorneys of record, RESNICK & LOUIS, P.C., and provides notice to this Court that, on today's date,

this action has been removed to the United States District Court for the District of Colorado

pursuant to 28 U.S.C. § 1441(b).  The United States District Court for the District of Colorado

possesses original jurisdiction over this action under 28 U.S.C. § 1332(a), because (1) Plaintiff

LISA BRADFORD and ACUITY are citizens of different states; and (2) the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

A copy of Defendant's Notice of Removal is attached hereto as **Exhibit A**.

DATE: January 17, 2017                    Respectfully submitted,

                                          */s/ John T. Osgood*
                                          John T. Osgood, SB # 34999
                                          Joel A. Palmer, SB # 36459
                                          RESNICK & LOUIS, P.C.
                                          6500 S. Quebec Street, Suite 300-32
                                          Denver, Colorado 80111
                                          Telephone and Facsimile: 303-872-6226
                                          Email: josgood@rlattorneys.com
                                                  japalmer@rlattorneys.com
                                          Attorneys for Defendant ACUITY, A MUTUAL
                                          INSURANCE COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2017, a true and correct copy of the foregoing **NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO** was served via Colorado Courts e-filing system (CCE) upon all counsel of record.

By:     */s/ Kelley Kessler*\*\*
          Kelley Kessler
          Employee of RESNICK & LOUIS, P.C.

\*\*In accordance with COLO. R. CIV. P. 121 § 1-26(7), a printed copy of this document with original signatures is being maintained by the filing party and will be available for inspection by other parties or the Court upon request.

# Exhibit E



**ROAD AND RESIDENCE ACUITY AUTO
AMENDED DECLARATIONS**

Insured:

NEIL & LISA BRADFORD
5531 S HARLAN ST
DENVER CO 80123

Agency:  7117-AF          (303)730-2327

SECURITY FIRST INSURANCE AGENCY INC
STE 100
7851 S ELATI ST
LITTLETON CO 80120

Policy Number:  R53630-6

Policy Period:  05-15-14 to 05-15-15

Change Date: 05-20-14

**Policy Coverage and Premium Information**

Uninsured Motorists Bodily Injury    $500,000 Each Person              $500,000 Each Accident        $243.00

Endorsements:
U1009      (1-11)  Colorado Uninsured Motorists Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . .        Included

**Vehicle Coverage and Premium Information**

2010  TOYO TUNDRA DOUBLE CAB BASE/SR
Vehicle Type:  Utility Car  Vehicle ID: 5TFUY5F13AX105874
      Garaging address:  5531 S HARLAN ST
                          DENVER CO 80123

| | | |
|---|---|---|
| Liability | $500,000 Each Occurrence | $250.00 |
| Medical Payments - Auto if not wearing a seatbelt | $5,000 Each Person | $21.00 |
| Medical Payments - Auto if wearing a seatbelt | $10,000 Each Person | Included |
| Damage by Collision | Actual Cash Value Less $500 Deductible | $271.00 |
| Damage Not by Collision | Actual Cash Value Less $500 Deductible | $156.00 |
| Towing and Labor (Includes Roadside Assistance) | $75 Per Disablement | $3.00 |

Endorsements:
U1075      (11-11)  Car Policy - Colorado . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .        Included
U1008      (11-13)  Colorado Amendatory Endorsement . . . . . . . . . . . . . . . . . . . . . . . . . . . . .        Included
U1100      (11-13)  Personal Auto Enhancements Endorsement - Colorado . . . . . . . . . . . . . .         $12.00
U743      (6-01)  Single Limit of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .        Included
U869      (6-01)  Full Safety Glass Coverage Endorsement . . . . . . . . . . . . . . . . . . . . . . . . .        Included
U956      (8-03)  Coverage for Damage to Your Car Exclusion . . . . . . . . . . . . . . . . . . . . .        Included

                                                           Total Vehicle Premium        $713.00

You qualify for this reduced premium because:
    * you have a furnished company car.
    * you have more vehicles than drivers in your household.
    * you have received a responsibility discount.
    * you have earned a valued customer credit.
    * you have received a safe driver discount.

1999  SUBA LEGACY OUTBACK BASE/OUTBA
Vehicle Type:  Private Passenger Car  Vehicle ID: 4S3BG685XX7628835
      Garaging address:  5531 S HARLAN ST
                          DENVER CO 80123

| | | |
|---|---|---|
| Liability | $500,000 Each Occurrence | $251.00 |

---

Insured:
NEIL & LISA BRADFORD
5531 S HARLAN ST
DENVER CO 80123

Policy: R53630-6
Agency: 7117-AF

| | | |
|---|---|---|
| Medical Payments - Auto if not wearing a seatbelt | $5,000 Each Person | $24.00 |
| Medical Payments - Auto if wearing a seatbelt | $10,000 Each Person | Included |
| Damage by Collision | Actual Cash Value Less $500 Deductible | $135.00 |
| Damage Not by Collision | Actual Cash Value Less $500 Deductible | $94.00 |
| Towing and Labor (Includes Roadside Assistance) | $75 Per Disablement | $9.00 |

Endorsements:
U1075      (11-11)  Car Policy - Colorado . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .        Included
U1008      (11-13)  Colorado Amendatory Endorsement . . . . . . . . . . . . . . . . . . . . . . . . . . . . .        Included
U1100      (11-13)  Personal Auto Enhancements Endorsement - Colorado . . . . . . . . . . . . . .         $12.00
U743      (6-01)  Single Limit of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .        Included
U869      (6-01)  Full Safety Glass Coverage Endorsement . . . . . . . . . . . . . . . . . . . . . . . . .        Included
U956      (8-03)  Coverage for Damage to Your Car Exclusion . . . . . . . . . . . . . . . . . . . . .        Included

                                                           Total Vehicle Premium        $525.00

You qualify for this reduced premium because:
    * you drive this vehicle 7,500 miles or less annually.
    * you have a furnished company car.
    * you have received a responsibility discount.
    * you have earned a valued customer credit.
    * you have received a safe driver discount.

2008  HYUN ELANTRA GLS/ELANTRA SE
Vehicle Type:  Private Passenger Car  Vehicle ID: KMHDU46D98U508099
      Garaging address:  5531 S HARLAN ST
                          DENVER CO 80123

| | | |
|---|---|---|
| Liability | $500,000 Each Occurrence | $1,114.00 |
| Medical Payments - Auto if not wearing a seatbelt | $5,000 Each Person | $159.00 |
| Medical Payments - Auto if wearing a seatbelt | $10,000 Each Person | Included |
| Damage by Collision | Actual Cash Value Less $1,000 Deductible | $903.00 |
| Damage Not by Collision | Actual Cash Value Less $1,000 Deductible | $214.00 |
| Towing and Labor (Includes Roadside Assistance) | $75 Per Disablement | $5.00 |

Endorsements:
U1075      (11-11)  Car Policy - Colorado . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .        Included
U1008      (11-13)  Colorado Amendatory Endorsement . . . . . . . . . . . . . . . . . . . . . . . . . . . . .        Included
U1100      (11-13)  Personal Auto Enhancements Endorsement - Colorado . . . . . . . . . . . . . .         $12.00
U743      (6-01)  Single Limit of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .        Included
U869      (6-01)  Full Safety Glass Coverage Endorsement . . . . . . . . . . . . . . . . . . . . . . . . .        Included
U956      (8-03)  Coverage for Damage to Your Car Exclusion . . . . . . . . . . . . . . . . . . . . .        Included

                                                           Total Vehicle Premium        $2,407.00

You qualify for this reduced premium because:
    * you have a furnished company car.
    * your student driver qualifies for a good student discount.
    * you have received a responsibility discount.
    * you have earned a valued customer credit.
    * you have received a safe driver discount.

2014  MAZDA 6 GRAND TOURING
Vehicle Type:  Private Passenger Car  Vehicle ID: JM1GJ1W6XE1115087

**ROAD AND RESIDENCE ACUITY AUTO**
**AMENDED DECLARATIONS**
**Page 3**

Insured:                                                    Policy: R53630-6
NEIL & LISA BRADFORD                                        Agency: 7117-AF
5531 S HARLAN ST
DENVER CO 80123

Garaging address:  5531 S HARLAN ST
                   DENVER CO 80123

| | | |
|---|---|---|
| Liability | $500,000 Each Occurrence | $316.00 |
| Medical Payments - Auto if not wearing a seatbelt | $5,000 Each Person | $36.00 |
| Medical Payments - Auto if wearing a seatbelt | $10,000 Each Person | Included |
| Damage by Collision | Actual Cash Value Less $500 Deductible | $505.00 |
| Damage Not by Collision | Actual Cash Value Less $500 Deductible | $306.00 |
| Towing and Labor (Includes Roadside Assistance) | $75 Per Disablement | $2.00 |

Endorsements:
| | | | |
|---|---|---|---|
| U1075 | (11-11) | Car Policy - Colorado . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | Included |
| U1008 | (11-13) | Colorado Amendatory Endorsement . . . . . . . . . . . . . . . . . . . . . . . . . . . . | Included |
| U1100 | (11-13) | Personal Auto Enhancements Endorsement - Colorado . . . . . . . . . . . . . . | $12.00 |
| U743 | (6-01) | Single Limit of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | Included |
| U869 | (6-01) | Full Safety Glass Coverage Endorsement . . . . . . . . . . . . . . . . . . . . . . . . . | Included |
| U956 | (8-03) | Coverage for Damage to Your Car Exclusion . . . . . . . . . . . . . . . . . . . . . | Included |

                                                    Total Vehicle Premium     $1,177.00

You qualify for this reduced premium because:
   * you have a furnished company car.
   * you have received a responsibility discount.
   * you have earned a valued customer credit.
   * you have received a safe driver discount.
Premium . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     $5,065.00

**Driver Information**

| Dr No | Car | Driver's Name | Birth Date | Sex | Mar | Prin |
|---|---|---|---|---|---|---|
| 001 | 004 | BRADFORD, NEIL STEPHEN | 03-04-71 | M | M | Y |
| 002 | 002 | BRADFORD, LISA LEANNE | 09-16-71 | F | M | Y |
| 003 | 003 | BRADFORD, JENNA KAITLYN | 03-17-97 | F | S | Y |

| Dr No | Car | Sch | GS | FRC |
|---|---|---|---|---|
| 001 | 004 | N | N | N |
| 002 | 002 | N | N | N |
| 003 | 003 | N | S | N |

**Vehicle Information**

2010 TOYO TUNDRA DOUBLE CAB BASE/SR  Driver Number 000

| Class | Zip Code | Territory | County | Symbol | Sur |
|---|---|---|---|---|---|
| 291130 | 80123 | 172 | 031 | 116 | 0% |

| Type | Use | FGB | Business Use |
|---|---|---|---|
| 2 | A | N | N |

U-732(2-12)                    Policyholder Original                    SO 01 06-02-14

---

**ROAD AND RESIDENCE ACUITY AUTO**
**AMENDED DECLARATIONS**
**Page 4**

Insured:                                                    Policy: R53630-6
NEIL & LISA BRADFORD                                        Agency: 7117-AF
5531 S HARLAN ST
DENVER CO 80123

1999 SUBA LEGACY OUTBACK BASE/OUTBA  Driver Number 002

| Class | Zip Code | Territory | County | Symbol | Sur |
|---|---|---|---|---|---|
| 111130 | 80123 | 172 | 031 | 014 | 0% |

| Type | Use | FGB | Business Use |
|---|---|---|---|
| 1 | A | N | N |

2008 HYUN ELANTRA GLS/ELANTRA SE  Driver Number 003

| Class | Zip Code | Territory | County | Symbol | Sur |
|---|---|---|---|---|---|
| 141180 | 80123 | 172 | 031 | 015 | 0% |

| Type | Use | FGB | Business Use |
|---|---|---|---|
| 1 | D | N | N |

2014 MAZDA 6 GRAND TOURING  Driver Number 001

| Class | Zip Code | Territory | County | Symbol | Sur |
|---|---|---|---|---|---|
| 111430 | 80123 | 172 | 031 | 035/035 | 0% |

| Type | Use | FGB | Business Use |
|---|---|---|---|
| 1 | F | N | N |

**Additional Interest Information**

Lienholder:
2014 MAZDA 6 GRAND TOURING
     MAZDA FINANCE
     PO BOX 542000
     OMAHA NE 68154

U-732(2-12)                    Policyholder Original                    SO 01 06-02-14

# Exhibit F

IC 1987141 7832

# AMENDED AND RESTATED
# ARTICLES OF INCORPORATION

*CHANGE OF NAME*

FILED
## ACUITY, A Mutual Insurance Company  DONETTA DAVIDSON
COLORADO SECRETARY OF STATE

**DELAYED EFFECTIVE DATE**

6-1-2001

**ARTICLE I**
**NAME**

20011061488
20011061488  M
$  60.00
SECRETARY OF STATE
03-27-2001 13:05:18

The name of the corporation shall be ACUITY, A Mutual Insurance Company.

## ARTICLE II
## ORGANIZATION AND PURPOSES

The corporation is organized under Chapter 611 of the Wisconsin Statutes for the purpose of insuring its members upon the mutual plan of insurance against any of the hazards or risks as may be authorized or permitted for companies of its class under the laws of the State of Wisconsin, and with respect to policies issued elsewhere than in Wisconsin, the laws of the states in which it is licensed and to engage in such other business as is not prohibited by Section 610.21 of the Wisconsin Statutes or any successor statute.  The corporation shall have all powers conferred upon corporations by the laws of the State of Wisconsin except those prohibited for mutual insurance companies.

## ARTICLE III
## MEMBERS

The corporation shall have members. Each person, firm, corporation, trust, limited liability company, partnership  or other organization or entity holding a policy of insurance shall be a member of the corporation during the period such policy is in force.  Each member shall have one vote at all regular or special meetings of members.

## ARTICLE IV
## MANNER OF EXERCISING CORPORATE POWER

The business and affairs of the corporation shall be managed by its Board of Directors, which shall be nominated and elected in accordance with the corporation's by-laws as in effect from time to time.

## ARTICLE V
## DIRECTORS

The number of directors shall be as specified from time to time in the by-laws, but not less than nine nor more than thirteen. The directors shall be divided into three classes, each consisting of at least three directors.  The directors whose terms expire in 2000 shall constitute one class, those whose terms expire in 2001 shall constitute the second class and those whose

COMPUTER UPDATE COMPLETE
OM

Revised 06/01/01

0M

terms expire in 2002 shall constitute the third class. At each annual meeting of the members commencing with the 2000 meeting, the number of directors equal to the number of the class whose term expires at the time of such meeting shall be elected to hold office until the third succeeding annual meeting.

## ARTICLE VI
## OFFICERS

The corporation shall have such principal officers, with such duties, as from time to time required under Chapter 611.12 (3) of the Wisconsin Statutes and as specified in the corporation's by-laws.

## ARTICLE VII
## EXISTING ARTICLES SUPERSEDED

These Amended and Restated Articles of Incorporation shall supersede and take the place of the existing Amended Articles of Incorporation and all amendments thereto.

## ARTICLE VIII
## ADOPTION AND AMENDEMENT OF BY-LAWS

The Board of Directors or Members may enact By-Laws for the conduct of the affairs of the Corporation, consistent with these Amended and Restated Articles of Incorporation and the laws of the State of Wisconsin and any By-Laws so enacted shall supersede and take the place of any existing By-laws.  The Board of Directors may amend or repeal any By-Law, except for a By-law adopted by the Members which by its express terms provides that it may not be amended or repealed by the Board of Directors.  Any By-law adopted by the Board of Directors may be amended or repealed by a vote of two-thirds of the Members voting in person or by proxy at any regular or special meeting at which a quorum is present.

## ARTICLE IX
## AMENDMENT OF ARTICLES OF INCORPORATION

These Amended and Restated Articles of Incorporation may be amended by a vote of two-thirds of the Members voting  in person or by proxy at any regular or special meeting of the Members at which a quorum is present.

Revised 06/01/01

## AMENDED AND RESTATED BY-LAWS
### OF

### ACUITY
### A Mutual Insurance Company

### INTRODUCTION
### VARIABLE REFERENCES

Date of Adoption of these by-laws:

    **0.01.** The fiscal year of the corporation shall begin on the first day of January and end on the last day of December each year (See Section 7.02).

\*    **0.02.** Date of annual members' meeting (See Section 2.02):

| First | Tuesday | March | 1:30 P.M. |
|-------|---------|-------|-----------|
| (Week) | (Day) | (Month) | (Hour) |

\*    **0.03.** Required notice of members' meeting (See Section 2.05):

    (a) Not less than seven (7) days for the annual meeting.

    (b) Not less than ten(10) days nor more than sixty (60) days.

\*    **0.04.** Authorized number of directors (See Section 3.02):

\*    **0.05.** Required notice of special directors' meetings (See Section 3.05):

    (a)    Not less than three (3) days if by mail, and

    (b)    Not less than one (1) day if by facsimile, electronic mail, telegram, personal delivery, word of mouth, or telephone.

\*

\*These spaces are reserved for official notation of future amendments to these sections.

Revised 06/01/01

# ARTICLE I.  OFFICES

**1.01.  Principal Office.**  The corporation may have such principal and other offices, either within or without the State of Wisconsin, as the Board of Directors may designate or as the affairs of the corporation may require from time to time.

**1.02.  Registered Office.**  The address of the registered agent of the corporation required by law to be maintained in the State of Wisconsin may be, but need not be, identical with the address of the principal office of the corporation in the State of Wisconsin, and the address of the registered office may be changed from time to time by the Board of Directors.

# ARTICLE II.  MEMBERS

**2.01.  Qualifications.**  Each person, firm, corporation, trust, partnership, limited liability company or other entity holding a policy of insurance issued by the corporation shall be a member of the corporation during the period while such policy is in force.  Each policyholder shall have one vote at all meetings of members.

**2.02.  Annual Meeting.**  The annual meeting of the members shall be held in each year on the date and at the time set forth in Section 0.02 for the purpose of electing directors and for the transaction of such other business as may come before the meeting.  If the day fixed for the annual meeting shall be a legal holiday in the State of Wisconsin, such meeting shall be held on the next succeeding business day.  If the election of directors shall not be held on the day designated herein or fixed as herein provided, for any annual meeting of the members, or at any adjournment thereof, the Board of Directors shall cause the election to be held at a special meeting of the members as soon thereafter as convenient.

**2.03.  Special Meetings.**  Special meetings of the members for any purpose or purposes, unless otherwise prescribed by statute, may be called by either the President, Secretary, the Board of Directors, or by members of the corporation holding  ten percent (10%) of the votes entitled to be cast at the meeting.

**2.04.  Place of Meeting.**  The Board of Directors may designate any place, either within or without the State of Wisconsin, as the place of meeting for any annual meeting or for any special meeting called by the Board of Directors.  A waiver of notice signed by the members may designate any place, within or without the State of Wisconsin, as the place for the holding of such meeting.  If no designation is made, or if a special meeting be otherwise called, the place of meeting shall be the principal office of the corporation in the State of Wisconsin or such other suitable place in the county of such principal office as may be designated by the person calling such meeting.

**2.05.  Notice of Annual Meetings.**  A statement setting forth the time and place of the holding of annual meetings of members shall be printed or stamped upon all policies of insurance issued by the corporation.  A failure to include such statement on any policy shall not affect the validity of any annual meeting or of any action taken at any meeting.  A notice setting forth the time

and place of the holding of annual meetings of members shall also be published one time at least seven (7) days in advance of the date upon which the meeting is to be held in a newspaper published near the principal office of the corporation.

**2.06. Notice of Special Meetings.** Written notice of special meetings of members stating the place, day and hour of the meeting and the matter or matter for which the meeting is called, shall be delivered not less than ten (10) nor more than sixty (60) days before the date of the meeting, either personally by express courier, by mail, facsimile or electronic mail by or at the direction of the President, the Secretary, the Board of Directors, or the members calling the meeting, to each member entitled to vote at such meeting. If mailed through the United States Postal Service, such notice shall be deemed to be delivered when deposited in the United States mail, addressed to the member at his address as it appears on the records of the corporation, with postage thereon prepaid. If notice is delivered by express courier service, then notice shall be deemed to be given when delivered to such courier, addressed to the member at his address as it appears on the records of the corporation, and the necessary fee is paid. If notice be given by facsimile or electronic mail, it shall be deemed delivered when transmitted. In lieu of the foregoing, notice of said special meeting may be made by publishing notice of the same in a newspaper of general state-wide circulation not more than sixty nor less than ten days prior to such meeting, setting forth the place, day and hour of the meeting and the purpose or purposes for which the meeting is called.

**2.07. Proxies.** At all meetings of the members, a member may, unless prohibited by the articles of incorporation, vote by proxy executed in writing by the member or by a duly authorized attorney-in-fact. Such proxy shall be filed with the Secretary of the corporation before or at the time of the meeting. No proxy shall be valid after eleven months from the date of its execution, unless otherwise provided in the proxy.

**2.08. Waiver of Notice by Member.** Whenever any notice whatever is required to be given to the members under the by-laws or articles of incorporation or any provision of law, a waiver thereof in writing, signed at any time, whether before or after the time of meeting, by the members shall be deemed equivalent to the giving of such notice; provided that such waiver in respect to any matter of which notice is required under any provision of the Wisconsin Statutes, shall contain the same information as would have been required to be included in such notice except the time and place of meeting.

**2.09. Conduct of Meetings.** The President, and in his/her absence, the Vice President, shall call the meeting of the members to order and shall act as Chairman of the meeting, and the Secretary of the corporation shall act as secretary of all meetings of the members, but, in the absence of the Secretary, the presiding officer may appoint any other person to act as Secretary of the meeting.

**2.10. Voting.** The members shall have the right to vote on all matters submitted to a vote of the members and such other additional rights and powers as set forth in these by-laws or conferred upon the members under the Wisconsin Statutes. In the absence of express notice of the designation of some other person by the Board of Directors or by-laws of a member corporation, a corporate member's vote may be cast by its President, or by any other officer or proxy appointed by the

President. Where more than one insured is named in a policy, all those named shall collectively constitute one member for the purpose of voting at meetings of members. If they vote by proxy all those so named shall execute the proxy. Ten percent (10%) of the votes entitled to be cast, in person or by proxy, shall constitute a quorum at all meetings of members, though less than a quorum may adjourn the meeting. Except as hereinafter set forth, a majority of the votes cast by the members, in person or by proxy, at a meeting at which a quorum is present, shall be necessary for the adoption of any matter voted upon by the members, unless a greater proportion is required by law or the articles of incorporation. A two-thirds (2/3) majority of the votes cast by the members, in person or by proxy, at a meeting at which a quorum is present, shall be necessary for the amendment of these by-laws or the articles of incorporation by the members.

## ARTICLE III.  BOARD OF DIRECTORS

**3.01. General Powers.** The business and affairs of the corporation shall be managed by its Board of Directors.

**3.02. Number, Tenure, Qualifications and Election.** The number of directors of the corporation shall be as set forth in Section 0.04. Directors need not be members. Commencing with those persons who are first elected as directors after the year 2000 annual meeting of members, only persons who are under the age of seventy years old shall be eligible to serve as directors and if any director attains the age of seventy years old, his or her office shall immediately become vacant without any action by the corporation or its members. Each director shall hold office for the term he or she was elected, and until his/her successor shall have been elected, or until his/her prior death, resignation or removal. A director may be removed from office for cause by a vote of the members or directors taken at a meeting of the members or directors called for that purpose. Except as set forth in the preceding sentence, the provisions of Sections 181.0808 (1) through (7) of the Wisconsin Statutes shall not apply. A director may resign at any time by filing a written resignation with the Secretary of the corporation. The directors shall be divided into three equal classes. The directors whose terms expire in 2000 shall constitute one class, those whose terms expire in 2001 shall constitute the second class, and those whose terms expire in 2002 shall constitute the third class. At each annual meeting of the members commencing with the 2000 meeting, the number of directors equal to the number of the class whose term expires at the time of such meeting shall be elected to hold office until the third succeeding annual meeting.

**3.03 Nominating Committee.** The Board of Directors may appoint from its membership a Nominating Committee. At least ninety (90) days prior to the annual meeting of members, the Nominating Committee of the Board of Directors (or if no members have been appointed to a Nominating Committee, the Executive Committee of the Board of Directors) shall recommend to the Board of Directors candidates for the office of director to succeed the directors whose terms of office will expire on the day of such annual meeting and shall file the names of such candidates with the Secretary of the corporation. Upon approval by the Board of Directors, at least sixty (60) days prior to the annual meeting of members, such candidates shall be so nominated. A group consisting of ten percent (10%) or more of the members may also nominate candidates to succeed the directors whose terms will expire by filing with the Secretary of the corporation at least forty days before such

annual meeting a certificate signed by each of such members setting forth the full names and addresses of such members and the names and addresses of the candidates nominated and by filing with such certificate the written acceptance of such nomination by each nominee named in the certificate. The names of all nominees shall be made known by the Secretary to any member upon his written request. Candidates not nominated by the Board of Directors or by the members as herein provided shall not be voted upon at any such annual meeting or adjournment thereof, except in case of the death or resignation or disability of any candidate for the office of director, and in that event, the members present in person or by proxy may by majority vote of the members so present nominate a candidate to fill such vacancy.

3.04. **Annual and Regular Meetings.** The annual meeting of the Board of Directors shall be held in each year without other notice than this by-law immediately after the annual meeting of the members, for the purpose of electing officers and for the transaction of such other business as may come before the meeting. The place of such annual meeting shall be the same as the place of the meeting of the members which precedes it, or such other suitable place as may be announced at the meeting of the members. The Board of Directors may provide, by resolution, the time and place either within or without the State of Wisconsin, for the holding of additional regular meetings without other notice than such resolution.

3.05. **Special Meetings**. Special meetings of the Board of Directors may be called by or at the request of the Chairman of the Board (if the Board of Directors determines to elect one), the President, the Secretary or any two (2) directors. The Chairman of the Board, President, Secretary or directors calling any special meeting of the Board of Directors may fix any place, either within or without the State of Wisconsin, as the place for holding any special meeting of the Board of Directors called by them, and if no other place is fixed, the place of meeting shall be the principal office of the corporation in the State of Wisconsin.

3.05. **Notice; Waiver.** Notice of each meeting of the Board of Directors (unless otherwise provided in or pursuant to Section 3.04) shall be given to each director (i) by written notice delivered personally, delivered by express courier service, mailed through the U.S. mail, given by facsimile, electronic mail, or telegram, to such director at his business address or at such other address as such director shall have designated in writing and filed with the Secretary, or (ii) by word of mouth, or telephone personally to such director, in each case not less than that number of days prior thereto as set forth in Section 0.05. If mailed or delivered by courier, such notice shall be deemed to be delivered when deposited in the United States mail or presented to the courier so addressed, with postage thereon prepaid or the delivery fee otherwise paid. If notice be given by telegram, such notice shall be deemed to be delivered when the telegram is delivered to the transmitting agency. If notice be given by facsimile or electronic mail, it shall be deemed delivered when transmitted. Whenever any notice whatever is required to be given to any director of the corporation under the articles of incorporation or by-laws or any provision of law, a waiver thereof in writing, signed at any time, whether before or after the time of meeting, by the director entitled to such notice, shall be deemed equivalent to the giving of such notice. The attendance of a director at a meeting shall constitute a waiver of notice of such meeting, except where a director attends a meeting and objects thereat to the transaction of any business because the meeting is not lawfully called or convened.

Neither the business to be transacted at, nor the purpose of, any annual, regular or special meeting of the Board of Directors need be specified in the notice or waiver of notice of such meeting.

**3.06. Quorum.** Except as otherwise provided by law or by the articles of incorporation or these by-laws, a majority of the number of directors set forth in Section 0.04 shall constitute a quorum for the transaction of business at any meeting of the Board of Directors, but a majority of the directors present (though less than such quorum) may adjourn the meeting from time to time without further notice.

**3.07. Manner of Acting.** The act of a majority of the directors present at a meeting at which a quorum is present shall be the act of the Board of Directors, unless the act of a greater number is required by law or by the articles of incorporation or these by-laws.

**3.08. Conduct of Meetings.** The Board of Directors may elect from among their members a director who shall serve as the Chairman of the Board. The Chairman of the Board shall preside over the meetings of the Board of Directors. The position of Chairman of the Board shall not be an officer position of the corporation. In the event the Board of Directors determines not to elect a Chairman of the Board, or in his/her absence, the President, and in his/her absence, a Vice President in the order provided under Section 4.06, and in their absence, any director chosen by the directors present, shall call meetings of the Board of Directors to order and shall act as Chairman of the meeting. The Secretary of the corporation shall act as secretary of all meetings of the Board of Directors, but in the absence of the Secretary, the presiding officer may appoint any Assistant Secretary or any director or other person present to act as secretary of the meeting. The board may permit any or all directors to participate in a regular or special meeting or in a committee meeting of the board by, or to conduct the meeting through the use of, any means of communication by which any of the following occurs:

> (a) All participating directors may simultaneously hear each other during the meeting.

> (b) All communication during the meeting is immediately transmitted to each participating director, and each participating director is able to immediately send messages to all other participating directors.

If a meeting will be conducted through the use of any means described in subparagraphs (a) or (b), all participating directors shall be informed that a meeting is taking place at which official business may be transacted. A director participating in a meeting by any means described in subparagraphs (a) or (b) is considered to be present in person at the meeting.

**3.09 Vacancies.** Any vacancy occurring in the Board of Directors, including a vacancy created by an increase in the number of directors, may be filled until the next succeeding annual election by the affirmative vote of a majority of the directors then in office, though less than a quorum of the Board of Directors; provided, that in case of a vacancy created by the removal of a director by vote of the members, the members shall have the right to fill such vacancy at the same meeting or any adjournment thereof.

**3.10.** **Compensation.**  The Board of Directors, by affirmative vote of a majority of the directors then in office, may establish reasonable compensation of all directors for services to the corporation as directors, officers or otherwise, or may delegate such authority to an appropriate committee.

**3.11.** **Presumption of Assent.**  A director of the corporation who is present at a meeting of the Board of Directors or a committee thereof of which he/she is a member at which action on any corporate matter is taken shall be presumed to have assented to the action taken unless his/her dissent shall be entered in the minutes of the meeting or unless he/she files his/her written dissent to such action with the person acting as the secretary of the meeting before the adjournment thereof or forwards such dissent by registered mail to the Secretary of the corporation immediately after the adjournment of the meeting.  Such right to dissent shall not apply to a director who voted in favor of such action.

**3.12.** **Committees.**  The Board of Directors by resolution adopted by the affirmative vote of a majority of the number of directors set forth in Section 0.04 shall designate an Executive Committee, an Audit Committee and a Finance Committee and may designate one or more other committees, including a Compensation Committee, each committee to consist of three or more directors elected by the Board of Directors. The other committees, if any, shall have and may exercise such powers as are provided in the Resolution of the Board of Directors designating such committee, as such resolution may from time to time be amended and supplemented.  The Board of Directors may elect one or more of its members as alternate members of any such committee who may take the place of any absent member or members at any meeting of such committee, upon request by the President or upon request by the chairman of such meeting.  Each such committee shall elect a presiding officer from its members, shall fix its own rules governing the conduct of its activities and shall make such reports to the Board of Directors of its activities as the Board of Directors may request.

(a) **Executive Committee.**  The Executive Committee shall shall be composed primarily of directors who are not employees or officers of the corporation and shall have and may exercise, when the Board of Directors is not in session, the powers of the Board of Directors in the management of the affairs of the corporation, provided that in no case shall the Executive Committee or any other committee act in respect to dividends to policy holders, the election of principal officers or the filling of vacancies in the Board of Directors or committees created pursuant to this section or any matter described in Section 611.56(3) of the Wisconsin Statutes.

(b) **Audit Committee.**  The Audit Committee shall be composed primarily of, and chaired by, directors who are not officers or employees of the corporation.  In addition to any authority expressly granted to the Audit Committee by the Board of Directors, the Audit Committee shall be responsible for: recommending to the Board of Directors an independent auditing firm to conduct an annual audit of the corporation's financial statements; reviewing the terms of the independent auditor's engagement; reviewing the performance of the corporation's senior internal audit staff; serve as the liaison between the Board of Directors and the independent auditor; review the adequacy of the corporation's internal financial controls; review the independent auditor's report and make recommendations to the Board of Directors concerning any of the foregoing.

(c) **Finance Committee.** In addition to any authority expressly granted to the Finance Committee by the Board of Directors, the Finance Committee shall be responsible for the general oversight of the corporation's investments and the investments of any retirement plans sponsored by the corporation; communication between the Board of Directors and the corporation's senior officers responsible for the corporation's investments; communication between the Board of Directors and the corporation's independent investment advisors and consultants, if any; and recommendations to the Board of Directors regarding any of the foregoing.

(d) **The Compensation Committee.** The Compensation Committee, if one is designated by the Board of Directors, shall be composed primarily of, and be chaired by, directors who are not employees of the corporation. In addition to any authority expressly granted to the Compensation Committee by the Board of Directors, the Compensation Committee shall be responsible for reviewing and recommending to the Board of Directors the annual salary, bonus, and other direct and indirect benefits of the corporation's senior executives. The Compensation Committee shall periodically review the corporation's executive compensation programs to determined whether they are properly coordinated and sufficient to recruit, retain and reward executives for the benefit of the corporation. The Compensation Committee shall make recommendations to the Board of Directors concerning the foregoing. If no Compensation Committee has been designated by the Board of Directors, the duties of the Compensation Committee shall be performed by the Executive Committee.

**3.13. Unanimous Consent Without Meeting.** Any action required or permitted by the articles of incorporation or by-laws or any provision of law to be taken by the Board of Directors or any committee thereof at a meeting or by resolution may be taken without a meeting if a consent in writing, setting forth the action so taken, shall be signed by all of the directors or members of such committee entitled to vote with respect to such action.

## ARTICLE IV.  OFFICERS

**4.01. Number.** The principal officers of the corporation shall be a President, one or more Vice Presidents, a Secretary, and a Treasurer, each of whom shall be elected by the Board of Directors. The President and Vice President shall be members of the corporation. Such other officers and assistant officers as may be deemed necessary may be elected or appointed by the Board of Directors. At least three offices must be held by three separate individuals, however, any two or more offices may be held by the same person, except the offices of President and Vice President and President and Secretary. The duties of the officers shall be those enumerated herein and any further duties designated by the Board of Directors. The duties herein specified for particular officers may be transferred to and vested in such other officers as the Board of Directors shall elect or appoint, from time to time and for such periods or without limitation as to time as the Board of Directors shall order.

**4.02. Election and Term of Office.** The officers of the corporation shall be elected annually by the Board of Directors at the annual meeting of the Board of Directors. If the election of officers shall not be held at such meeting, such election shall be held as soon thereafter as

conveniently may be.  Each officer shall hold office until his/her successor shall have been duly elected or until his/her prior death, resignation or removal.

      **4.03.  Removal.**  Any officer or agent may be removed by the Board of Directors whenever in its judgment the best interests of the corporation will be served thereby, but such removal shall be without prejudice to the contract rights, if any, of the person so removed.  Election or appointment shall not of itself create contract rights.

      **4.04.  Vacancies.**  A vacancy in any principal office because of death, resignation, removal, disqualification or otherwise, shall be filled by the Board of Directors for the unexpired portion of the term.

      **4.05.  President.**  The President shall be the chief executive officer of the corporation and, subject to the control of the Board of Directors, shall in general supervise and control all of the affairs of the corporation, including the investments of the assets of the corporation.  He/she shall, when present, preside at all meetings of the Board of Directors unless the Board of Directors shall have elected a Chairman of the Board of Directors and designated such person to do so.  He/she shall have authority, subject to such rules as may be prescribed by the Board of Directors, to appoint such agents and employees of the corporation as he/she shall deem necessary, to prescribe their powers, duties and compensation, and to delegate authority to them.  Such agents and employees shall hold office at the discretion of the President.  He/she shall have authority to sign, execute and acknowledge, on behalf of the corporation, with the Secretary or any other proper officer of the corporation thereunto authorized by the Board of Directors, all deeds, mortgages, bonds, contracts, leases, reports and all other documents or instruments necessary or proper to be executed in the course of the corporation's regular affairs, or which shall be authorized by resolution of the Board of Directors, except in cases where the signing and execution thereof shall be expressly delegated by the Board of Directors or these bylaws to some other officer or agent of the corporation, or shall be required by law to be otherwise signed or executed; and except as otherwise provided by law or the Board of Directors, he/she may authorize any Vice President or other officer or agent of the corporation to sign, execute and acknowledge such documents or instruments in his/her place and stead.  In general he/she shall perform all duties incident to the office of the chief executive officer and such other duties as may be prescribed by the Board of Directors from time to time.  In the event the Board of Directors determines not to elect a Chairman of the Board or in the event of his/her absence or disability, the President shall perform the duties of the Chairman of the Board and when so acting shall have all the powers of and be subject to all of the duties and restrictions imposed upon the Chairman of the Board.

      **4.06.  Vice Presidents.**  In the absence of the President or in the event of his/her death, inability or refusal to act, or in the event for any reason it shall be impracticable for the President to act personally, the Vice President, or if more than one, the Vice Presidents in the order designated at the time of their election, or in the absence of any such designation, then in the order of their initial election, shall perform the duties of the President and when so acting shall have all the powers of and be subject to all the restrictions upon the President.  Any Vice President shall perform such duties as from time to time may be assigned to him/her by the President or the Board of Directors.

Revised 06/01/01

**4.07.** **Secretary.** The Secretary shall: (a) keep the minutes of the meetings of the Board of Directors in one or more books provided for that purpose; (b) see that all notices are duly given in accordance with the provisions of these by-laws or as required by law; (c) be custodian of the corporate records and the corporate seal and see that the seal of the corporation is affixed to all documents, the execution of which on behalf of the corporation under its seal is duly authorized; (d) have authority to sign, with the President or any other proper officer of the corporation thereunto authorized by the Board of Directors, all deeds, mortgages, bonds, contracts, leases, reports and all other documents or instruments necessary or proper to be executed in the course of the corporation's regular affairs, or which shall be authorized by resolution of the Board of Directors, except in cases where the signing and execution thereof shall be expressly delegated by the Board of Directors or these bylaws to some other officer or agent of the corporation, or shall be required by law to be otherwise signed or executed; and (e) in general perform all duties incident to the office of Secretary and have such other duties and exercise such authority as from time to time may be delegated or assigned to him/her by the President or by the Board of Directors.

**4.08.** **Treasurer.** The Treasurer shall: (a) have charge and custody and be responsible for all funds and securities of the corporation except that the President shall have the full responsibility as to the investment of the assets of the corporation; (b) receive and give receipts for moneys due and payable to the corporation from any source whatsoever, and deposit all such moneys in the name of the corporation in such banks, trust companies or other depositories as shall be selected in accordance with the provisions of Section 5.04; and (c) in general perform all of the duties incident to the office of Treasurer and have such other duties and exercise such other authority as from time to time may be delegated or assigned to him/her by the President or by the Board of Directors. If required by the Board of Directors, the Treasurer shall give a bond for the faithful discharge of his/her duties in such sum and with such surety or sureties as the Board of Directors shall determine.

**4.09.** **Other Assistant and Acting Officers.** The Board of Directors shall have the power to appoint any person to act as assistant to any officer, or as agent for the corporation in his/her stead, or to perform the duties of such officer whenever for any reason it is impracticable for such officer to act personally, and such assistant or acting officer or other agent so appointed by the Board of Directors shall have the power to perform all the duties of the office to which he/she is so appointed to be assistant, or as to which he/she is so appointed to act, except as such power may be otherwise defined or restricted by the Board of Directors.

**4.10.** **Salaries.** The salaries of the principal officers shall be fixed from time to time by the Board of Directors or by a duly authorized committee thereof, and no officer shall be prevented from receiving such salary by reason of the fact that he/she is also a director of the corporation.

## ARTICLE V. CONTRACTS, LOANS, CHECKS AND DEPOSITS

**5.01.** **Contracts.** The Board of Directors may authorize any officer or officers, agent or agents, to enter into any contract or execute or deliver any instrument in the name of and on behalf of the corporation, and such authorization may be general or confined to specific instances. In the absence of other designation, all deeds, mortgages and instruments of assignment or pledge made

by the corporation shall be executed in the name of the corporation by the President or one of the Vice Presidents; the Secretary or an Assistant Secretary, when necessary or required, shall affix the corporate seal, if any, thereto; and when so executed no other party to such instrument or any third party shall be required to make any inquiry into the authority of the signing officer or officers.

5.02.  **Loans.**  No indebtedness for borrowed money shall be contracted on behalf of the corporation and no evidences of such indebtedness shall be issued in its name unless authorized by or under the authority of a resolution of the Board of Directors.  Such authorization may be general or confined to specific instances.

5.03.  **Checks, Drafts, Etc.**  All checks, drafts or other orders for the payment of money, notes or other evidences of indebtedness issued in the name of the corporation, shall be signed by such officer or officers, agent or agents of the corporation and in such manner, including by means of facsimile signatures, as shall from time to time be determined by or under the authority of a resolution of the Board of Directors.

5.04.  **Deposits.**  All funds of the corporation not otherwise employed shall be deposited from time to time to the credit of the corporation in such banks, trust companies or other depositories as may be selected by or under the authority of a resolution of the Board of Directors.

## ARTICLE VI.  LIABILITY AND INDEMNITY OF OFFICERS AND DIRECTORS

6.01  **Liability of Directors and Officers.**  Except as otherwise provided by law, no director or officer shall be liable to the corporation, its members, or any person asserting rights on behalf of the corporation or its members, for damages, settlements, fees, fines, penalties or other monetary liabilities arising from a breach of, or failure to perform, any duty resulting solely from his/her status as a director or officer, unless the person asserting liability proves that the breach or failure to perform constitutes (a) a willful failure to deal fairly with the corporation in connection with the matter in which the director or officer has a material conflict of interest, (b) a violation of criminal law, unless the director or officer had reasonable cause to believe his/her conduct was lawful or no reasonable cause to believe his/her conduct was unlawful, (c) a transaction from which the director or officer derived an improper personal profit, or (d) willful misconduct.

6.02.  **Indemnity of Directors and Officers.**  The corporation shall indemnify a director or officer, to the extent he/she has been successful on the merits or otherwise in the defense of any threatened, pending or completed civil, criminal, administrative or investigative action, suit, arbitration or other proceeding, whether formal or informal, which involves foreign, federal, state or local law and which is brought by or in the right of the corporation or by any other person, for all reasonable expenses, including fees, costs, charges, disbursements and attorney fees, incurred in the proceeding, provided the director or officer was a party because he/she is a director or officer of the corporation, and in all other cases, the corporation shall indemnify a director or officer against liability, including judgments, settlements, penalties, assessment, forfeitures, fines and reasonable expenses, incurred by the director or officer in the proceeding, provided the director or officer was a party because he/she is a director or officer of the corporation, unless the liability was incurred

because the director or officer breached or failed to perform a duty he/she owes to the corporation and the breach or failure to perform constitutes (a) a willful failure to deal fairly with the corporation in connection with the matter in interest, (b) a violation of criminal law, unless the director or officer had reasonable cause to believe his/her conduct was lawful or no reasonable cause to believe his/her conduct was unlawful, (c) a transaction from which the director or officer derived an improper personal profit, or (d) willful misconduct.

The termination of a proceeding by judgment, order, settlement or conviction, or upon a plea of no contest or an equivalent plea, shall not, by itself, create a presumption that indemnification of the director or officer is not required under this by-law. No indemnification is required under this by-law to the extent the officer or director has previously received indemnification or allowance of expenses from any person, including the corporation, in connection with the same proceeding. Determination of whether indemnification is required under this by-law shall be made by the means provided pursuant to Section 181.0873 of the Wisconsin Statutes.

The corporation, by its Board of Directors, may indemnify in a like manner, or with any limitations, any employee or agent of the corporation who is not a director or officer with respect to any action taken or not taken in his/her capacity as such employee or agent. The foregoing rights of indemnification shall be in addition to all rights to which directors, officers, employees or agents may be entitled as a matter of law, by resolution of the Board of Directors, or by written agreement with the corporation. All terms used in this Section 6.02 for which a definition is provided in Section 181.0871 of the Wisconsin Statutes and not otherwise herein defined shall have the meaning set forth in said statute.

**6.03.** <u>**Maintenance of Insurance.**</u>  The corporation may, by its Board of Directors, purchase and maintain insurance on behalf of any person who is a director, officer, employee or agent of the corporation against liability asserted against and incurred by the person in his/her capacity as a director, officer, employee or agent, or arising from his/her status as a director, officer, employee or agent, regardless of whether the corporation is required or authorized to indemnify the person against the same liability.

**6.04.** <u>**Transactions With the Corporation.**</u>  No contract or other transaction between the corporation and one or more of its directors or any other corporation, firm, association, or entity in which one or more of its directors are directors or officers or are financially interested, shall be either void or voidable because of such relationship or interest or because such director or directors are present at the meeting of the Board of Directors or a committee thereof which authorizes, approves or ratifies such contract or transaction or because his, her or their votes are counted for such purpose, if (a) the fact of such relationship or interest is disclosed or known to the Board of Directors or committee which authorizes, approves or ratifies the contract or transaction by a vote or consent sufficient for the purpose without counting the votes or consents of such interested directors; or (b) the contract or transaction is fair and reasonable to the corporation. Common or interested directors may be counted in determining the presence of a quorum at a meeting of the Board of Directors or a committee thereof which authorizes, approves or ratifies such contract or transaction. This Section shall not be construed to invalidate any contract or other transaction which would otherwise be valid under the common and statutory law applicable thereto.

## ARTICLE VII.  GENERAL

**7.01.** <u>Seal</u>.  The Board of Directors may provide for a corporate seal, which shall be circular in form and shall have inscribed thereon the name of the corporation and the words "Corporate Seal".

**7.02.** <u>Fiscal Year</u>.  The fiscal year of the corporation shall be as provided in Section 0.01.

**7.03.** <u>Dividends</u>.  The corporation may return on all· or any policies savings or dividends in such amounts and such classifications as the Board of Directors shall determine is fair and reasonable, but such refund of savings or dividends shall in no case be made contingent upon the continuance of premium payments or maintenance of the policy.

**7.04.** <u>Previously Existing By-laws</u>.  From and after their adoption, these amended by-laws shall supersede and take the place of the theretofore existing by-laws of the corporation and amendments thereto, however adopted.

**7.05** <u>Interpretation</u>.  To the extent not governed by other specific provisions of the Wisconsin Statutes, these amended by-laws shall be interpreted in accordance with the provisions of Chapter 611 and, to the extent applicable to mutual insurance companies, Chapter 181 of the Wisconsin Statutes and the case law thereunder.

## ARTICLE VIII.  AMENDMENTS

**8.01.** <u>By Members</u>.  Members shall have the right to vote to approve any amendment to these by-laws to the extent required or permitted by Wisconsin Statutes or as requested by the Board of Directors, and such amendment shall be effective only upon obtaining the member approval required by these by-laws.

**8.02.** <u>By Directors</u>.  These by-laws may, except as provided to the contrary under the laws of the State of Wisconsin, be altered, amended or repealed and new by-laws may be adopted by the Board of Directors by affirmative vote of a majority of the number of directors present at any meeting at which a quorum is in attendance; however, no by-law adopted by the members shall be amended or repealed by the Board of Directors if the by-law so adopted so provides or if, pursuant to Chapter 611 of the Wisconsin Statutes, the approval of the members is required to amend such by-law.

**8.03.** <u>Implied Amendments</u>.  Any action taken or authorized by the Board of Directors, which would be inconsistent with the by-laws then in effect but is taken or authorized by affirmative vote of not less than the number of directors required to amend the by-laws so that the by-laws would be consistent with such action, shall be given the same effect as though the by-laws had been temporarily amended or suspended so far, but only so far, as is necessary to permit the specific action so taken or authorized.



**State of Wisconsin**
**Office of the Commissioner of Insurance**
**P O Box 7873**
**Madison, Wisconsin 53703-7873**

## Certification of the Authenticity of Copy of Document on File

The Commissioner of Insurance of the State of Wisconsin certifies that the attached copy of

AMENDED AND RESTATED ARTICLES OF INCORPORATION  AND BYLAWS
(REVISED 06/01/01)

for  HERITAGE MUTUAL INSURANCE COMPANY (TO BE KNOWN AS ACUITY, A
MUTUAL INSURANCE COMPANY EFFECTIVE JUNE 1, 2001)

is a true and correct copy of the original now on file with the Office of the Commissioner of Insurance.

Dated at Madison, Wisconsin, this __8th___ day of __March__ , 2001.

*Connie O' Connell*

Connie O'Connell
Commissioner of Insurance

OCI 24-003 (R 01/98)

# Exhibit G

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

LISA BRADFORD, a Colorado individual

     Plaintiff,

v.

ACUITY, A MUTUAL INSURANCE COMPANY, a Wisconsin company

     Defendant.

---

## DECLARATION OF ART F. LAUTENSCHLAGER

---

I, Art F. Lautenschlager, Declarant, make this Declaration based upon my own personal knowledge and state as follows:

1.     I am currently 61 years of age, and have thus reached the age of majority within any and all jurisdictions in the United States, including the state of Colorado.

2.     I am competent to make the foregoing Declaration based upon my personal knowledge of the factual matters discussed below.

3.     At all points in time relevant hereto, I have been a Senior Field Claims Representative with ACUITY, a Mutual Insurance Company.

4.     As set forth at page 3 of the Notice of Removal, ACUITY's Amended and Restated Articles of Incorporation filed with the Colorado Secretary of State and dated effective June 1, 2001, incorporating the Amended and Restated Bylaws of ACUITY ("Bylaws"), identify

1

ACUITY as a Wisconsin corporation with its principal office in Wisconsin. The Bylaws permit ACUITY to designate offices outside the state of Wisconsin as principal offices. However, ACUITY does not operate a principal office in the state of Colorado.

5.    After Lisa Bradford ("Ms. Bradford") – through her counsel – informed ACUITY that she intended to make a claim for underinsured motorist ("UIM") benefits, I requested an in-person meeting with Ms. Bradford and her representatives for the express purpose of obtaining additional information relative to ACUITY's adjustment of her claim and response to her demand for UIM benefits.

6.    The in-person meeting took place on May 13, 2016.

7.    At the May 13, 2016 meeting between Ms. Bradford, her attorneys, and representatives of ACUITY (including myself), Ms. Bradford demanded the $1,500,000.00 in policy limits under the UIM provisions of Neil and Lisa Bradford's ACUITY policy.

8.    In response to Ms. Bradford's demand for the $1,500,000.00 UIM limits under the ACUITY policy, ACUITY extended a compromise offer to Ms. Bradford for her UIM claim in the amount of $250,000.00 on October 31, 2016.

9.    After ACUITY provided additional information detailing the basis of its offer two days later on November 2, 2016 in accordance with Ms. Bradford's request through her counsel, Ms. Bradford rejected this settlement offer. Ms. Bradford subsequently filed her Complaint.

10.    Further Declarant sayeth naught.

Dated this 13th day of January, 2017

_____
Art F. Lautenschlager

2

# Exhibit H

| | |
|---|---|
| DISTRICT COURT, DENVER COUNTY,<br>STATE OF COLORADO<br>Court Address:   1437 Bannock Street<br>                         Golden, CO 80202<br>Phone number:   (720) 865-8301<br>――――――――――――――――――――<br>**Plaintiff:**<br>LISA BRADFORD, an individual,<br><br>v.<br><br>**Defendant:**<br>ACUITY, A MUTUAL INSURANCE COMPANY, a<br>Wisconsin entity.<br>――――――――――――――――――――<br>Attorneys for Plaintiff:<br>Michael Mihm, Reg. No. #14768<br>Peter A. McClenahan, Reg. No. #41044<br>Thomas D. Neville, Reg. No. #35011<br>OGBORN MIHM, LLP<br>1700 Broadway, Suite 1900<br>Denver, Colorado 80290<br>Phone Number: (303) 592-5900<br>Email:  Michael.Mihm@OMTrial.com<br>             Peter.McClenahan@OMTrial.com<br>             Thomas.Neville@OMTrial.com | DATE FILED: December 21, 2016 12:01 PM<br>FILING ID: AAC8FC0A53F27<br>CASE NUMBER: 2016CV34694<br><br><br><br>▲ COURT USE ONLY ▲<br>――――――――――――――<br>Case No.:<br><br>Div.:        Ctrm.: |

**DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING
OF COMPLAINT AND JURY DEMAND**

1.  **This cover sheet shall be filed with each pleading containing an initial claim for relief in every district court civil (CV) case, and shall be served on all parties along with the pleading.** It shall not be filed in Domestic Relations (DR), Probate (PR), Water (CW), Juvenile (JA, JR, JD, JV), or Mental Health (MH) cases. Failure to file this cover sheet is not a jurisdictional defect in the pleading but may result in a clerk's show cause order requiring its filing.

2.  **Check one of the following:**

    ☐This case is governed by C.R.C.P. 16.1 because:

    -   The case is not a class action, domestic relations case, juvenile case, mental health case, probate case, water law case, forcible entry and detainer, C.R.C.P. 106, C.R.C.P. 120, or other similar expedited proceeding; *AND*

- A monetary judgment over $100,000 is not sought by any party against any other single party. This amount includes attorney fees, penalties, and punitive damages; it excludes interest and costs, as well as the value of any equitable relief sought.

☒This case is not governed by C.R.C.P. 16.1 because (check ALL boxes that apply):
☐The case is a class action, forcible entry and detainer, C.R.C.P. 106, C.R.C.P. 120, or other similar expedited proceeding.

☒A monetary judgment over $100,000 is sought by any party against any other single party. This amount includes attorney fees, penalties, and punitive damages; it excludes interest and costs, as well as the value of any equitable relief sought.

☐Another party has previously indicated in a Case Cover Sheet that the simplified procedure under C.R.C.P. 16.1 does not apply to the case.

*NOTE: In any case to which C.R.C.P. 16.1 does not apply, the parties may elect to use the simplified procedure by separately filing a Stipulation to be governed by the rule within 35 days of the at-issue date. See C.R.C.P. 16.1(b)(1) (re: case type) and C.R.C.P. 16.1(e) (re: amount in controversy). In any case to which C.R.C.P. 16.1 applies, the parties may opt out of the rule by separately filing a Notice to Elect Exclusion (JDF 602) within 45 days of the at-issue date. See C.R.C.P. 16.1(d).*

☐A Stipulation or Notice with respect to C.R.C.P. 16.1 has been separately filed with the Court, indicating:
☐C.R.C.P. 16.1 applies to this case.
☐C.R.C.P. 16.1 does not apply to this case.

**4.** ☒This party makes a **Jury Demand** at this time and pays the requisite fee. See C.R.C.P. 38. (Checking this box is optional.)

Date: 12/21/2016 _____          */s/ Michael T. Mihm* _____
                                              Signature of Party or Attorney for Party